The next case is United States v. Aquart Good morning. May it please the court. Daniel Habib, Federal Defenders of New York, on behalf of Azebo Aquart. The vicar counts in this prosecution should be vacated and dismissed. Under the applicable categorical approach, the Connecticut murder offenses alleged as vicar predicates sweep more broadly than the generic term murder, as that term is used in section 1959. This defect is plain on the face of the indictment and dismissal is the appropriate remedy. Furthermore, this claim was properly before the district court, and it's properly before this court, under this court's decision in United States v. Frias, which arose in an analogous procedural posture, and which held, applying the version of Rule 12 that governed at the time of Mr. Aquart's trial, that this court was free in the first instance to evaluate the facial sufficiency of an indictment, notwithstanding the failure to present that challenge in a prior appeal. To elaborate, the Connecticut murder offenses alleged in this case are non-generic for two reasons, neither of which is full-on disputed by the government in this case. First? Can I just ask about the Frias argument that you just presented? Yes. So that relies on your claim being jurisdictional? Am I understanding that correctly? Not necessarily, Your Honor, no. So in Frias, to give sort of a brief procedural recap, in Frias, the defendant had been convicted of an 848 murder and sentenced to life. This court, on the initial appeal, affirmed the conviction and remanded for resentencing in light of Booker. On resentencing, the defendant was again sentenced to life. And then on appeal to this court from the resentencing, he advanced for the first time the claim that the indictment failed to state an 848E offense. This court said, not because the claim was jurisdictional, but because under the version of Rule 12b3b that governed, a challenge to the facial sufficiency of an indictment could be presented at any time while the case was pending. And so that's the version applicable at Mr. Akar's trial, and it governs the procedural analysis before this court. To elaborate, the Connecticut murder offenses are non-generic for two reasons. Well, let me ask you about this. 1959 doesn't talk about generic crimes. It talks specifically about a crime of violence against, in violation of the laws of any state. So that would suggest that it's talking about murder as prescribed by, under the laws of the state, or is that not a correct way to look at it? Your Honor, I think section 1959A enumerates various predicate offenses. And it's a requirement that they both violate the laws of a state and that they correspond to the generic understanding of those terms. Why should we assume that when usually we've done that with statutes that don't specifically prescribe something under the laws of any state? So, Your Honor, I think the proposition that when Vicar uses terms like murders, kidnaps, assaults, it refers to the generic definition of those offenses comes from a number of places. But it has to be in violation of the law of the state. It must be both, Your Honor. It must be both murder, as that term is generically understood, and it must additionally violate state law. Can you explain why? Because I'm having the same difficulty. Because just looking at the plain meaning of the statute, it seems murders in violation of the laws of any state. And you would say, okay, I have to look to Connecticut's law. There has to be a murder under Connecticut law. So what is your authority for saying we need to look at the categorical approach to give meaning to the word? If I could amplify that. I mean, generally we have applied the categorical approach. We're looking at past convictions to see if the least amount of activity that would have been criminally punished corresponds to the immigration consequences or sentencing consequences or what have you. Whereas that, again, as Judge Livingston is pointing out, that isn't how the statute is structured. So I also don't understand why we need to apply a categorical approach here. So let me see if I can decouple two questions here. The first is whether these offenses have generic meanings, Judge Raji, and the second is whether the categorical approach applies to the comparison between the state offense alleged and that federal generic offense. As to the first point, Chief Judge Livingston, for the proposition that these offenses are generic in nature, we rely on the legislative history of the Vicar Statute, and we rely on the Supreme Court's decisions in Nardello and Shidler. And so Shidler in particular, this court construing a comparable provision of the RICO statute, holds that for a state offense to count as, in that case, extortion under the RICO statute, the offense must be capable of being generically classified as extortionate. And so in Shidler, for example, the Supreme Court said that even though the conduct proved, in that case, a civil RICO action, violated state extortion laws, those state extortion laws did not correspond to generic extortion because they did not require the obtaining of property. To the second question, Judge Carney, why we apply the categorical approach in making this comparison in the circumstance of an instant offense, I would say two things. First, the Supreme Court's decision in Davis tells us that the categorical approach is not limited to prior offenses. Davis applies the categorical approach to an instant offense. Additionally, this court's 2022 decision in Chappelle applied the categorical approach to compare the instant offense of Hobbs Act robbery to the enumerated offense of robbery under the sentencing guidelines. So in both instances, what's driving application of the categorical approach is text. But what about the text here where it says that if you're in violation of BICAR 1959A, if you murder, kidnap, and so on, in violation of the laws of the state or the United States, so a separate United States offense? That's right. So how does that, do we apply a categorical approach with whatever statute might have been mentioned as violated, whatever federal statute? We do, and I think that's true for several reasons. First, I think it's consistent with precedent that has routinely, indeed uniformly, applied the categorical approach when the question is whether a state offense corresponds to a generic federal definition. And so, for example, that was true in all of the Supreme Court's ACCA cases concerning the enumerated offenses of burglary and arson and extortion. It was true, as I just mentioned, Judge Carney and Chappell. And I would also encourage this Court to look at the Supreme Court's decision in Moncrief v. Holder, which concerned an aggravated felony ground for illicit trafficking in a controlled substance. The Court said because this is a generic offense, we apply the categorical approach. Indeed, the precise language from the opinion is, almost as night follows day, quote, the aggravated felony at issue here, illicit trafficking in a controlled substance, is a generic crime. So the categorical approach applies. Let me indulge this notion that we would consider this possibly not a generic murder. How does that work under Castleman, where the intentional taking of a life is presumptively a crime that requires the use of force? It requires the use of force by someone. So, Your Honor, the question in this case is not whether the offense has an element of the use of force. Right? This is not an ACCA violent felony case. This is not a guidelines crime of violence case or a Section 924C case. The question is not whether force is an element of the offense. Indeed, under this Court's decision in Scott, I think it's clear that an intentional murder categorically involves the use of force. What's at issue here is whether it's generically murder. And what we've said is that as to both prongs, or rather both Connecticut statutory offenses alleged in this indictment, the conduct is not generically murder. The statutes are not generic murder. And that's because? As to the intentional murder statute? The intentional murder by duress or deception fails generic murder for what's left? Because the common understanding of the term murder, and by the way, this particular point is not contested by the government. When we speak of a generic offense, we mean the offense as commonly understood, as defined in the criminal laws of the various states, legal dictionaries, treatises, etc. As we've demonstrated in our opening brief, and the government has not disputed, the vast majority of American jurisdictions would not treat the causing of suicide by deception as murder. It would be prosecuted either not at all or as some lesser homicide offense. Well, then let me ask you this. Given how Connecticut has done this, why isn't this a severable offense? So, Your Honor, what I would say is that as to that question, all that the government has said by way of demonstrating that the offense is separable into intentional and causing suicide is to point to the statutory term or. We know that's insufficient because, among many cases, the Supreme Court's decision in Mathis tells us the mere use of a disjunctive in statutory language is not sufficient to indicate divisibility. Rather, what's necessary is that the crime be broken out into separate sections or separate subsections or that there be a specific unanimity requirement in state case law. And the government hasn't used any of those in addition of divisibility here. If I may, Judge Carney, come back to your question about why the categorical approach applies here, I did want to make one textual point, which is picked up in the Fourth Circuit's decision in Keene, which is this. The Vicar Statute, and this is at page 16 of the Special Appendix, enumerates a number of offenses that can be vicar predicates. Murder, the one alleged here, kidnaps, maims, et cetera, but also lists, quote, threatens to commit a crime of violence against any individual. We know that that statutory predicate unequivocally triggers the categorical approach because the term crime of violence is a defined term in Title 18 of the United States Code. It's defined in 18 U.S.C. Section 16. And we know that both prongs of that crime of violence definition call for categorical analysis. Okay. Thank you. Good morning, Your Honors. May it please the Court, Assistant U.S. Attorney Alina Coronado for the Government. This is the second time, as this Court's aware, that this case has been before you. In the first appeal, the Court affirmed Mr. Eckhart's convictions and merely remanded, for one purpose, a new penalty proceeding. But instead, on remand, the defendant sought to dismiss all counts of conviction on the basis of new arguments that were not raised previously in his first appeal. Based on the mandate rule and the law of the case, the Government asks this Court to reject that request. This Court of Appeals has already addressed and affirmed the defendant's convictions. The defendant should not now be given yet another attempt to re-litigate his guilt. Mr. Habib says that his argument, the one he's focused on, is jurisdictional, and that's why we should hear what's your response to that. I think the case law makes quite clear that these challenges are not jurisdictional. The defendant conflates two different concepts. Jurisdiction on the one hand, and failure to state a claim on the other. Here, the arguments he raises are arguments about what conduct the statute prohibits. These are merits questions. The fact that they exist does not, in and of itself, disempower this Court from hearing the case in the first place. A jurisdictional challenge, by contrast, is a facial question. It asks if, on its face, the indictment fails to charge a federal crime at all. And we know from a long line of case law that indictment defects, even if any existed in this case, which the Government definitely does not concede, but indictment defects are not jurisdictional. It's not a demanding standard. The indictment merely needs to track the language of the statute, which it does here. And the line of cases post-Rahafe makes clear that omissions from an indictment do not deprive this Court of jurisdiction. The second argument that the defendant raises is that there was a change of controlling law. Again, the Supreme Court's 2019 Davis decision involved a completely separate statute, not the Vicar statute. It involved the 924C statute, which contains substantial differences. But Mr. Hemke is arguing that there are considerable parallels between that statute and this, and that the language, for example, threatens to commit a crime of violence, uses terms that have been held to trigger application of the categorical approach. And again, we are confronted with a statute that uses murder in a kind of generic way, and refers then to the violation of laws of the state. Those seem to be the same kind of triggers that we have applied in the past to look to see whether there is a match or whether we risk elevating a sentence based on conduct that shouldn't have been considered to be a match for the crime, not what Congress had intended. So what's wrong with that reasoning? I'm sure Mr. Hemke would articulate it in a more refined way than I have, but that's the gist of it as I understand it. Yes, Your Honor. In the government's view, the two statutes are actually quite textually different. In 924C, we see a discussion of elements. That's one of the key terms that courts have often looked at in determining whether the categorical approach applies. The Vicar statute is bereft of those types of terms. But what about crime of violence is the phrase that he invoked. True, although that is not applicable to the case at bar. Here, the government agrees that the question here is not whether an amorphous crime of violence could constitute a proper predicate, but rather whether murder constitutes the proper predicate. So your answer is maybe the threat to commit a crime of violence aspect of the statute ought to trigger the categorical approach, but not murder in violation of Connecticut law or murder generally. We certainly would take no position on that crime of violence section, but that aspect of the Vicar statute that's at issue here is missing terms like elements, felony, offense, conviction. Those are terms that courts have found that trigger the categorical approach. Here, the Vicar statute also, as this Court has noted, applies only to currently pending charges. The Department of Justice, though, for many years has, in its manual, recommended application of the categorical approach in the prosecutions under this statute, hasn't it? How do you account for that? So certainly there is a tendency to be cautious to the extent possible to ensure the repose of convictions. But the law simply does not require the categorical approach to the Vicar statute. And we see that courts are increasingly coming to that determination. We saw that in the Fourth Circuit in Keene. The Eastern District in the Lugo case also briefly came to that conclusion, although based on different reasoning. In an analogous set of circumstances, the Sixth Circuit in Johnson, a case that was just decided a few weeks ago, came to that same conclusion in the RICO context. There simply is no default to the categorical approach. The courts have made very clear that the categorical approach should be applied if and only if the statutory text, the context of legislative history, demand it. But moreover, even if the categorical approach did apply here, Connecticut murder is a valid Vicar predicate. There is a categorical match. The Connecticut murder statute is clearly divisible. And the jury instructions that guided the jury specified that the jury had to find that Mr. Eckhart intended to kill another person. Under Mathis, we are permitted to take a peek at the jury instructions and similar documents to confirm the divisibility. But even if there were some doubt as to that, there is no clear error or manifest injustice here. The laws- So could you address the Speedy Trial Act claim? We have recently, 2017, 18, and 19, either affirmed or reversed on the basis of Speedy Trial Act violations where someone was incarcerated for 54 months and 25 months under house arrest in Tigano, 82 months incarcerated before trial, black, 68 months incarcerated. And here we have Mr. Eckhart incarcerated for 64 months between the first indictment and the first charge and trial. Now, admittedly, there has been years and years and years worth of proceedings before this claim was raised, but still it's a constitutional right. And the record seems to reflect that Mr. Eckhart urged his counsel to object to delays in different circumstances. And in doing the Barker and Wingo analysis, I wonder whether he doesn't maybe have a valid claim based on our recent decisions and whether, therefore, we shouldn't overlook that- whether we should overlook that it is late raised. Your Honor, certainly Mr. Eckhart was incarcerated for a long period of time while awaiting trial. And so under that first prong of the Barker analysis, the length of delay- Five years and four months is right? Yes, yes. That does include 11 months that he was awaiting trial on the first federal case, so not all 64 months were in relation to the case at bar. But yes, certainly 64 months is a lengthy period of time. Of course, I'll note just parenthetically that in a complex case such as this, particularly a capital case, we do often see longer periods of delay than in a kind of standard street crime. But nonetheless, certainly under that first prong of the Barker analysis, there is enough to trigger a more searching inquiry. However, the other three prongs- the second factor as to the reason for the delay, the third factor as to the vigorous assertion of speedy trial rights, and the fourth factor as to prejudice- all speak in concert against a finding of a speedy trial violation. The government does not agree that the defendant asserted his speedy trial right with vigor and consistency. As Your Honor was pointing out, there is some scarce record evidence that at the very beginning of his case, actually even before the incident case was charged, he briefly indicated a desire to go to trial on his non-capital charge- then pending non-capital charges. At the time, the government said absolutely, and there is a discussion in the record about how the government willingly agreed to sever those counts and proceed on them. But then Mr. Eckhart apparently must have experienced a change of heart or whatever other reason. He then became the reason for the delay. He repeatedly sought continuances every time trial approached. In fact, so much so that the government actually filed a brief opposing the repeated continuance of trial and raising the toll it was taking on his victim's families. And so not only was he not- was he responsible for the delay, his lawyer said that this was their trial strategy, that quote, slow is good in this context. The brief, you know, comments that Mr. Eckhart made early on, the 1983 complaint that he filed with respect to a completely different case, simply do not rise to the level of vigorous, consistent assertion of the trial right that would be needed for the third Barker factor to swing in his way. In fact, what we really see is an opportunistic assertion of the trial right, and certainly under the fourth factor, no meaningful prejudice. Thank you. Just one final word, Your Honors, about the equities. Here, there is no clear error. There is no manifest injustice. In fact, vacating his convictions would do the opposite. It would cause manifest injustice. And so without any basis to disturb Mr. Eckhart's convictions, the government asks that this court affirm the district court's judgment. I'm going to ask if I can just ask one final question. The appellant faults the government for not engaging with their cotton argument and suggests they have urged a narrow reading of cotton as a case that was speaking to apprendee issues. I want to hear your views on that, particularly in light of then the alteration to Rule 12 that was made, the committee notes say, specifically in response to cotton, making a challenge to an indictment a motion that must be made before trial. So what's the government's view on how is it all cotton and Rule 12B3, what effect do you think they have here? Is Your Honor referring to the question as to whether the challenges are jurisdictional? Yes. Yes. So the government's view is that change to 12B3 does not carry much weight in this particular case. You sure of that? I mean, they've urged a reading of cotton that would be limited to its facts, apprendee, and the change that the committee made or that the Supreme Court and Congress now made, is Rule 12 says a defect in the indictment must be made before trial, and the committee notes say that that was prompted by cotton. Would that before cotton, certain of these challenges to indictments, you could raise it at any time it was considered fatal if there was a charging error, but now it has to be made beforehand. What's your position? So any challenge should have been made before trial, but even in a circumstance where it wasn't, here there simply was no defect in the indictment, there was no jurisdictional problem, and thus Mr. Acart's challenge must fail. Thank you. Thank you, Your Honors. Thank you. I'd like to make three brief points, first on the procedural question, second on the merits of the Vicar claim, and third on the merits of the speedy trial claim. As to the jurisdictional and procedural question, as I had hoped to make clear with my response to Chief Judge Livingston's question, it is not necessary for Mr. Acart to show that the claim is jurisdictional in nature to prevail, and I would direct the court to page 235 of the Frias decision. It quotes the version of Rule 12b-3b that was in effect when Mr. Acart was tried and filed his notice of appeal here, and it provided, quote, that an indictment, a claim that the indictment, quote, fails to invoke the court's jurisdiction or to state an offense may be heard at any time while the case is pending. So those are distinct avenues for review of the facial sufficiency of an indictment. So putting to one side cotton, under the plain text of the rule as applicable here, the mere claim that the indictment fails to state an offense, and that's what we've alleged here, that the indictment does not adequately state a generic murder as necessary to support a Vicar prosecution, can be raised at any time. What do you do with that as opposed to does it state an offense under 1959? And then it pleads murder. Now, you're saying it's inadequate in that respect, but it pleads a Vicar offense. I mean, the case law says that you just have to plead the language of the indictment. Your Honor, it pleads a Vicar offense, but when it comes to pleading the element that the offense violates state law, which is an element of a Vicar prosecution, it pleads a non-generic state statute. To present an analogy, it would be as if an indictment today charged a 924C violation based on a Hobbs Act conspiracy, right? An offense that we know no longer qualifies as a crime of violence under the statute. That indictment would fail to state an offense, even though it tracks statutory language. If I may turn to the merits of the Vicar claim, I want to emphasize two things. First, the government is noncommittal on the question whether the statutory term crime of violence in Section 1959A might be susceptible to a categorical approach. But if it is, and yet the other enumerated Vicar offenses would be subject to, I suppose, a circumstance-specific approach, that would introduce significant internal inconsistency into the statute with costs to administrability and practicality. I also want to point out the relevance of the DOJ manual in this context. It's not just that the government has taken the position. It's that the government, in a carefully composed document prepared by Maine Justice, thought that the statutory language admitted the construction that the categorical approach applied. The Justice Department manual didn't really spell out a lot of reasoning about it. It just kind of assumed that the categorical approach applied. Or am I wrong? I think there's the reasoning. Primarily, the government's manual relied on cases such as Taylor applying the categorical approach to, as Your Honor has pointed out, prior convictions. We now know that's well enough prerequisite for application of the categorical approach. But there was analysis. And the government said, point blank, and this is cited at page 19 of the opening brief, the determination of whether a statutory offense falls within the generic definition of a particular crime involves a pure issue of statutory construction that can be resolved prior to indictment and turns on whether the statutory elements of the offense, not the factual circumstances of the specific case, substantially corresponds to the generic definition of the crime. The relevance of that language here, I think, really goes to the rule of lenity, which is if the statute admits of this reading and the government has urged this reading for years, the statute cannot have provided unambiguous notice of a contrary reading. If the Court would indulge me one minute on the speedy trial claim. Judge Carney, Mr. Ackar was detained and facing the possibility and then the certainty of a capital prosecution for 64 months. This Court said in Buffalo Amusement that 54 months while at liberty on bond was, quote, unquestionably substantial and weighed heavily in favor of a finding of a constitutional violation. The vast majority of that delay was attributable to the government's repeated superseding indictments, each of which alleged a new theory of liability, and to the government's deliberative process with respect to pursuing the federal death penalty. On the fourth prong of the test, Mr. Ackar suffered not only oppressive pretrial detention, but pretrial detention under the most anxiety-producing circumstances imaginable, the fate of a capital prosecution hanging over his head. That delay was extraordinary and it violated the Sixth Amendment. Finally, just to make one factual clarification with respect to the severance point that the government has brought up today, the government, it was not clear that the case could have proceeded on all of the tried offenses back in 2007. The indictment operative at that time had two counts, a crack conspiracy and a felon in possession count. Mr. Ackar moved for severance, the district court granted severance, and indicated that it was prepared to try the felon in possession count only at that time. The drug count would be deferred as the grand jury continued to investigate the drug conspiracy. Thank you, Your Honor. I just want to be sure I understand. On your arguments that don't pertain to the categorical nature of murder, how would we excuse the failure to raise these when your client was last before the court? Your Honor, we would rely on either of the exceptions to the law of the case doctrine where there is a need to correct a clear error or to prevent manifest injustice. And the manifest injustice with respect to the speedy trial claim would be what? I think the manifest injustice there would be the extraordinary showing of pretrial delay, as Judge Carney noted, well in line with this court's precedents finding constitutional violations, and the extraordinary characteristics of Mr. Ackar's pretrial detention during that period during which he faced not only the dead time that any pretrial detainee faces, but the extraordinary oppression of, as I said, first the uncertainty whether there would be a capital prosecution, and then the certainty that there would be one. We look at this in the context of a defendant who is now serving a life sentence, and to that, and is not claiming that the incarceration prejudiced his ability to defend at trial. So I'm still a little perplexed as to what would be the manifest injustice requiring vacator of his conviction. So as to impairment of the defense. Reversal, right? On the speedy trial, you're looking for reversal, not a retrial. That's correct, Your Honor. As to impairment of the defense, this court made clear in Tigano that affirmative proof of impairment of a defense is not required to state a constitutional violation. It's one of the factors to be balanced, to be sure, and that there are other cognizable sources of prejudice, as we've alluded to, pretrial delay and anxiety. And in Tigano, this court said nearly seven years of pretrial confinement in local jails without conviction amply demonstrates prejudice. Granted, the time is slightly shorter here, but the conditions of confinement were far more oppressive. Okay, thank you. Thank you, Your Honor. Thank you both. Very well argued. And we'll take the matter under advisory.